IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**STACI R.,**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

Civ. No. 6:18-cv-01453-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Staci R. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## BACKGROUND

On December 5, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. Tr. 16. Both applications alleged disability beginning January 1, 2005. *Id.* The applications were denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on April 18, 2017. *Id.* On July 18, 2017, the ALJ issued a partially favorable decision finding Plaintiff disabled beginning on December 5, 2014, but not

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

disabled before that date. Tr. 26. On June 4, 2018, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. Plaintiff's date last insured was December 31, 2009. *Id.*

At step two, the ALJ found that since the alleged onset date Plaintiff had the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); bipolar II disorder; and an anxiety disorder not otherwise specified. Tr. 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ found that prior to December 5, 2014, Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional restrictions: she could understand, remember, and carry out simple, routine, repetitive tasks and she was limited to no more than occasional interaction with coworkers and the general public. Tr. 20. Beginning on December 5, 2014, Plaintiff had the RFC to perform light work with the following additional restrictions: she can understand, remember, and carry out simple, routine, repetitive tasks; she is limited to no more than occasional interaction with coworkers and the general public; and she needs to be redirected once per hour to stay on task. Tr. 23.

At step four, the ALJ found Plaintiff was unable to perform past relevant work. Tr. 24. At step five, the ALJ determined that, prior to December 5, 2014, Plaintiff was capable of performing work as a marker, a collator operator, and a photocopy machine operator. Tr. 24-25. The ALJ also determined that, beginning on December 5, 2014, there were no jobs Plaintiff could perform with her RFC. Tr. 25. As a result, the ALJ determined that Plaintiff was not disabled prior to December 5, 2014 but became disabled as of that date. Tr. 25-26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) determining that Plaintiff was disabled beginning on December 5, 2014 without seeking medical expert testimony; (2) improperly discounting Plaintiff's subjective symptom testimony; and (3) improperly discounting the lay witness testimony of Plaintiff's mother.

I.      **Determining Onset Date Without Medical Expert Testimony**

Plaintiff contends that the ALJ erred by determining that Plaintiff became disabled beginning on December 5, 2014 without seeking medical expert testimony.

Social Security Ruling ("SSR") 83-20 provides that "[t]he onset date should be set on the date when it most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] (or gainful activity) for a continuous period of at least 12 months or result in death.  Convincing rationale must be given for the date selected."  1983 WL 31249, at *3 (Jan. 1, 1983).  Thus, "when the evidence regarding date of onset of mental impairment is ambiguous . . . the ALJ should determine the date based on an informed inference." *Morgan v. Sullivan*, 945 F.2d 1079, 1082 (9th Cir. 1991).  In certain cases, "[s]uch an inference is not possible without the assistance of a medical expert." *Id.* at 1083.  Under ordinary circumstances, however "an ALJ is equipped to determine a claimant's disability onset date without calling on a medical advisor." *Wellington v. Berryhill*, 878 F.3d 867, 874 (9th Cir. 2017).  "SSR 83-20 does not apply when the record has no meaningful gaps.  A medical advisor is not required when, despite some inadequacies, a relatively completed medical chronology of the claimant's condition during the relevant time period is available." *Id.* (internal quotation marks and citation omitted).

Here, the ALJ noted a paucity of medical records from before Plaintiff's date last insured.  Tr. 22.  The ALJ gave "some weight" to the determination of the reviewing medical sources, Tr. 22-23, but in assessing Plaintiff's limitations post-December 5, 2014, the ALJ gave great weight to the opinion of consultative examiner Scott Alvord, Psy. D.  Tr. 23.

Dr. Alvord assessed Plaintiff on May 9, 2017.  Tr. 598-605.  Dr. Alvord found Plaintiff "very difficult to evaluate," noting that she presented as "acutely manic," "slightly delusional

(grandiose and paranoid)," and he noted that she required redirection "every few minutes." Tr. 598, 600. Plaintiff "also gesticulated rapidly and followed tangents," and "insisted on providing information not the least bit applicable to the question at hand." Tr. 598. Dr. Alvord diagnosed Plaintiff with bipolar affective disorder, ADHD, an anxiety disorder, and a remote history of alcohol and amphetamine abuse. Tr. 602. Dr. Alvord believed that Plaintiff was not capable of managing her own funds. *Id.*

In functional terms, Dr. Alvord believed that Plaintiff would have moderate limitations on her ability to make judgments about simple work-related decisions and marked limitations in her ability to understand or carry out complex instructions, as well has in her ability to make judgments about complex work-related decisions. Tr. 603. She would have extreme limitations to her ability to interact appropriately with the supervisors, coworkers, or the public and extreme limitations to her ability to respond to usual work situations or changes in a routine work setting. Tr. 604.

As noted, Dr. Alvord's opinion comes long after the alleged onset date and after Plaintiff's date last insured, but it stands alone as a psychological evaluation of Plaintiff. As Plaintiff points out, there is evidence of many of the impairments described by Dr. Alvord in the medical records of the period prior to Plaintiff's date last insured. *See, e.g.*, Tr. 273-74 (in October 2006, Plaintiff presented as rocking back and forth and side to side and described difficulty with concentration and forgetfulness, including forgetting to take her medication); Tr. 278 (in May 2007, Plaintiff presented as speaking rapidly and rocking back and forth); Tr. 366-67 (in March 2008, Plaintiff reported being anxious, depressed, suffering panic attacks, and having trouble keeping up in school; Plaintiff presented as "tremulous, shaking, jitter, moving around in her chair constantly," and "appears to be in a manic phase right now."); Tr. 291 (in December 2008, Plaintiff described as "high mood-wise, talking fast, distractable, her thoughts are racing,").

While it is true that, as the ALJ points out, Plaintiff was in school and volunteering during the period between the alleged onset date and the date last insured, the Court concludes that there are substantial gaps in the medical record and the ALJ inadequately supported the decision to assign December 5, 2014 as the onset date for Plaintiff's disabling impairments. Because this bears on Plaintiff's eligibility for benefits prior to December 5, 2014, this error was harmful.

## II.  Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

At the hearing, Plaintiff testified that she attended community college full time beginning in 2004 and graduated with an associates degree in 2007. Tr. 38-39. Plaintiff began attending the University of Oregon ("UO") immediately after graduating from community college. Tr. 38. Plaintiff attended UO for a year and a half before she left due to her ADHD symptoms. Tr. 38-39. Plaintiff's financial aid package required that she be a full-time student and so she was unable to remain at UO as a part time student, although Plaintiff believed she was capable of sustaining part time studies. Tr. 39.

Plaintiff was required to engage in volunteer work as a condition of public assistance she received from the state and so she volunteered at Goodwill "for many years." Tr. 40. At Goodwill, Plaintiff worked in the warehouse cleaning and testing donations for resale. Tr. 41. Plaintiff volunteered at Goodwill for between ten and twenty hours per week. *Id.* Plaintiff testified that she got along with her coworkers, although she went on to testify at some length about conflicts with her coworkers. Tr. 46-47. In terms of daily activities, Plaintiff reported that she does household chores and cooking for the family. Tr. 50.

Plaintiff testified that her ADHD makes it difficult for her to remember to take her medication. Tr. 43. When she took her ADHD medication, Plaintiff found that it alleviated her problems with focus. Tr. 44. Plaintiff also takes medication for her bipolar disorder. Tr. 51.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to December 5, 2014." Tr. 22.

However, the ALJ provides very limited support for the decision to discount Plaintiff's subjective symptom testimony. The ALJ summarized the medical records, which showed that

Plaintiff experienced symptoms associated with anxiety, bipolar disorder, and ADHD, as well as Plaintiff's issues with taking her medication, which stemmed at least in part from her difficulties with memory. Tr. 22. The ALJ did not, however, identify anything in this recitation that contradicted Plaintiff's testimony. In *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), the Ninth Circuit held that an ALJ errs when their written decision fails to identify inconsistencies, but instead simply states the non-credibility conclusion and then summarized the medical evidence supporting the RFC determination. *Id.* at 494. "This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited." *Id.* The present case suffers from the same defect identified in *Brown-Hunter* and the Court cannot rely on the *post hoc* rationales offered by the Commissioner in its briefing before this Court.

The Court concludes that the ALJ failed to provide sufficient clear and convincing reasons for discounting Plaintiff's testimony and further concludes that the error was harmful.

### III.     Lay Witness Testimony

Plaintiff contends that the ALJ erred by rejecting the lay witness testimony of Plaintiff's mother, Sharon R. An ALJ must take into account lay witness testimony as to the severity of a plaintiff's symptoms. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may discount lay witness testimony by providing "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Sharon R. prepared a third-party function report in support of Plaintiff's application for disability benefits. Tr. 231-38. Sharon R. reported that Plaintiff's mood was "always changing" which made it "hard to be around her." Tr. 231. Plaintiff had a dog, but it now lives with Sharon R. because Plaintiff "doesn't feed it." Tr. 232. Plaintiff needed reminders to do basic personal

hygiene and had alarms set to remind her to do tasks around the house. Tr. 232-33. Plaintiff can sometimes do laundry and cooks with the assistance of a microwave, but she needed a phone call from Sharon R. to encourage her to do house and yard work. Tr. 233. Plaintiff does not go out alone and shopping takes her "forever, sometimes hours." Tr. 234. Sharon R. reported that Plaintiff was not able to handle her own money and Sharon R. took care of paying Plaintiff's bills. *Id.* Plaintiff only spends time with her children, has no social activities, and does not go anywhere on a regular basis. Tr. 235. Sharon R. reported that Plaintiff has problems getting along with her family. *Id.* Plaintiff speaks too loudly and had difficulties with memory, completing tasks, concentration, understanding, following instructions, and getting along with others. Tr. 236. Sharon R. reported that Plaintiff reacts badly to authority figures "if anything's not going her way." *Id.* Sharon R. also reported that Plaintiff had no friends and was "always fighting with her dad, grandmother, aunts, sister, and myself." Tr. 238.

The ALJ noted and summarized Sharon R.'s testimony but did not provide any basis for rejecting that testimony. Tr. 21. The Commissioner asserts that Sharon R.'s testimony was not relevant because it was offered after the date last insured and after the date on which the Plaintiff was determined to be disabled. Sharon R.'s report notes that she had known Plaintiff for her entire life and her testimony would be relevant to the question of Plaintiff's disability in the prior period. The Court concludes that the ALJ erred by failing to provide a germane reason for discounting Sharon R.'s lay witness testimony.

### IV. Remedy

For the reasons set forth above, the Court concludes that the ALJ's decision contains harmful errors and must be reversed and remanded. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court.

Page 10 – OPINION & ORDER

*Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted).

On review of the record, the Court concludes that this case is not appropriate for an immediate award of benefits and that the proper resolution is a remand for further proceedings. On remand, the ALJ should (1) determine the onset date of Plaintiff's disabling impairment with the assistance of a medical expert; (2) reassess Plaintiff's subjective symptom testimony and either credit that testimony or provide clear and convincing reasons for discounting it; and (3) reassess the lay witness testimony of Plaintiff's mother, Sharon R., and either credit that testimony or provide a germane reason for discounting it.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

It is so ORDERED and DATED this ____7th_____ day of December 2022.

    /s/Ann Aiken
ANN AIKEN
United States District Judge